MINCHEW *v.* JUNIATA COLLEGE *et al.*
CITY OF BAXLEY *v.* NIGHTINGALE, administrator, *et al.*

Nos. 12838, 12839.  JUNE 16, 1939.  REHEARING DENIED JULY 15, 1939.

*Wade H. Watson,* for Mrs. Minchew.
*J. B. Moore* and *Highsmith & Highsmith,* for City of Baxley.
*M. E. Wood,* for Juniata College.
*J. P. Highsmith,* for Nightingale, administrator.

DUCKWORTH, Justice.  D. N. Minchew died in February, 1938, leaving surviving him a wife and minor child.  His estate consisted of some personal property and a house and lot in the City of Baxley, Georgia, over which there were three outstanding security deeds and against which there had attached city tax, county, and State tax liens, and street-paving assessment liens, for a number of years.  The house and lot was set aside as a part of a year's support for the widow and child, the return of the appraisers approved by the court of ordinary reciting that the "property is hereby set aside as said year's support, subject to any and all indebtedness secured by legal and valid outstanding security deeds

against said property, . . it being the intention hereby to set aside as said year's support all right, title, interest, and equity the said D. M. Minchew had in and to said above-described property subject to the valid outstanding security-deed debts held against same at the time of his death; and we value the equity in said property so set aside at the sum of $1300." In October, 1938, the property was sold at public sale by virtue of the first security deed, it being announced at the time of the sale that the property was being sold clear of all liens of every kind, and that all claims would be settled from the proceeds of the sale. H. K. Drew purchased the property at the sale for $5600. After paying the amount of his bid to the sheriff, Drew filed in the superior court of Appling County a petition to require that all lienholders set up their claims to the fund in the hands of the sheriff, and to order the distribution of the fund in accordance with the priorities of the claimants, so that the property which he bought at the sale might be clear of all liens. All interested parties intervened and asserted their claims to the proceeds of the sale. Besides the year's support claim of the widow and child of D. M. Minchew, claims to the fund were interposed as follows: costs of sale, $105.07; security deeds, $3970.94; taxes, $2173.06.

On the trial of the case it was contended that Juniata College, the grantee in the second security deed, had lost its right to preference as a security-deed holder, by reason of the following facts: In 1924 Juniata College obtained a judgment against Minchew on the debt secured by its deed, and in March, 1925, it executed to Minchew a quitclaim deed to the property, in which it was recited that the deed was "executed for the purpose of levy and sale only," etc. The property, however, was not sold to satisfy the judgment, and nothing further was done to enforce the collection thereof. The judge to whom the case was submitted entered judgment ordering distribution of the funds on substantially the following basis: Since the security-deed debts amount to $3970.94, the equity in the property which was set apart as a year's support is worth $5600 less $3970.94, or $1629.06. A year's support is superior to taxes on its proportionate part of the value of the property,—$\frac{1629.06}{5600.00}$ of the total amount of the taxes ($2173.06), or $632.11. The balance of the taxes, $1540.95, is a first claim against the fund, and must be applied on the tax liens proportionately.

The balance of the fund, less costs of the sale and court costs in the case, was ordered paid to the security-deed claims (the fund being insufficient to pay these claims in full), on the ground that security deed claims are superior to a year's support. Nothing was left for the year's support. Mrs. Minchew and the City of Baxley, tax claimant, each excepted.

■ It is contended that Juniata College, grantee in a security deed from the deceased, by the execution of a quitclaim deed in 1925 reciting that it was made "for the purpose of levy and sale only," divested itself of title and all rights under the security deed. This contention is unsound, for the reason that the law authorizes such procedure and protects the grantor in such quitclaim deed against all parties in claim, and restricts such a transaction to the single purpose of vesting title for the purpose of levy and sale, giving to the same the nature of a deed in escrow. *Dykes* v. *McVay,* 67 *Ga.* 502; *Coleman* v. *Maclean,* 101 *Ga.* 303 (28 S. E. 861); *Clark* v. *Havard,* 122 *Ga.* 273 (50 S. E. 108). Regardless of the time intervening between the date of the execution of such a deed and a levy and sale of the property therein conveyed, the grantee would never by virtue of such a deed acquire title to the land for any purpose other than to authorize its sale under the levy. Nor would the grantee in the security deed thereby forfeit his rights and title under the security deed for any purpose other than to enable him to have a legal levy and sale of the premises involved. Juniata College still retains all of its rights under the security deed held by it.

■ The major problem in this case is the determination of the priorities of the respective claimants to the fund derived from the sale of property belonging to the estate of D. M. Minchew. It appears that the property was sold at public sale under an execution in favor of the first security-deed holder, who announced at the time of sale that all liens against the property would be settled from the proceeds of the sale, and that thereafter all of the lienholders intervened or interpleaded and asserted their claims in a suit to determine the order of distribution of the fund derived from the sale. The case was presented to the judge only for determination of priority of liens as related to this fund, and for judgment accordingly. The judgment rendered by him was assigned as error by two of the parties, and the questions raised in each bill of exceptions

related only to the question whether the decision was in accordance with the true priorities. This court will deal with the case accordingly, and will not decide other questions. The actual costs of the sale are the first claim against the fund. *Lathem* v. *Stringer,* 145 *Ga.* 224 (88 S. E. 941). The priority of the claims is more difficult of determination. The other claims consist of debts secured by security deeds, a year's support, and taxes. Thus we have a class of claims based on security deeds, which are admittedly superior to a year's support but inferior to liens for taxes. We have liens for taxes, which are superior to security deeds but inferior to a year's support. Finally, we have a year's support, which is superior to tax liens and inferior to security deeds. The fund for distribution is larger than the security-deed debts, but is less than the total of the security-deed debts and the tax claims. After much study, we have concluded that the character of the various claims is the determining factor of the problem presented. The effect of the security deeds was to place title to the property in the grantees until the debts secured should be fully paid. The year's support is effective only as against the equity of redemption which the grantor of the security deeds held. As between the year's support and the security deeds, the latter are entitled to priority in the settlement of their claims. The fund left after payment of costs of sale may therefore be divided into two portions, one to represent "title" and the other to represent the "equity" in the property. The amount of the title fund is the full amount of the security-deed claims, while the balance constitutes the equity. The effect of the tax liens upon these two funds must now be determined. "Taxes shall be paid before any other debt, lien, or claim whatsoever, and the property returned or held at the time of returning them, or thereafter, shall always be subject." Code, § 92-5707. However, a year's support is superior to taxes. § 113-1508.

We shall first consider the tax claim with reference to the "title" fund. Liens of tax executions are prior in dignity to deeds to secure debt. *Belser* v. *Puckett,* 179 *Ga.* 249 (2) (175 S. E. 565); *Thompson* v. *Adams,* 157 *Ga.* 42 (2) (120 S. E. 529). However, since the grantor retained possession and control of the property and thus had every beneficial interest in the property, he is primarily liable for the taxes. *National Bank of Athens* v. *Danforth,* 80 *Ga.* 55 (7 S. E. 546); *Wells* v. *Savannah,* 87 *Ga.* 397 (13 S. E.

442) ; *Central of Georgia Railway Co.* v. *Wright,* 124 *Ga.* 630, 632 (53 S. E. 207) ; *Decatur County Building & Loan Association* v. *Thigpen,* 173 *Ga.* 363 (3) (160 S. E. 387) ; *Armour Fertilizer Works* v. *Durrence,* 176 *Ga.* 519 (168 S. E. 572). Therefore, where a fund representing both the title and the equity is before the court for distribution, the equity or interest of the grantor should first be subjected to the payment of the taxes. In the present case the equity is insufficient to pay the tax claims in full. Since these taxes are superior to the security deeds, the "title" fund must be used to pay the balance of the taxes in excess of the "equity" fund. We conclude that the security-deed holders are entitled to the full amount of the title fund, the total of their secured debt, less the taxes in excess of the amount of the "equity." This rule would seem to be equitable, regardless of the size of the fund for distribution. If the equity is sufficient to discharge the taxes in full, the holders of the security deeds will receive payment in full. If the entire value of the property does not exceed the amount secured by deeds, there is no equity, and therefore the tax liens are entitled to full priority over the claims of security-deed holders. The same conclusion was reached in *Georgia Refinancing & Loan Co.* v. *Marietta,* 178 *Ga.* 761 (174 S. E. 346), where the security-deed debts exceeded the value of the property. The judgment of the lower court in the present case was apparently based upon the statement by this court in the *Marietta* case, that, "If the year's support had been of any value, there should have been an offer to pay the amount of the tax, less the tax on the value of the year's support." It is apparent that this statement was obiter, and therefore not controlling. As to that portion of the taxes which are to be paid from the "title" fund, there can be no doubt that this should be applied to the payment of taxes. Certainly the year's support has no right to it, since it had no claim to this portion of the fund received from the sale.

We come now to a discussion of the priority of the claim for year's support over taxes with reference to the "equity." Where, after the death of the grantor in a security deed, the equity of redemption is set apart as a year's support to his widow and minor children, such equitable interest is not liable for any part of the taxes which have previously accrued. *Real Estate Loan Co.* v. *Union City,* 177 *Ga.* 55 (3) (169 S. E. 301) ; *Livingston* v. *Lang-*

*ley,* 79 *Ga.* 169 (3 S. E. 909)·; Code, § 113-1508. The theory has been advanced, however, that the part of the property represented by the legal title is liable for its proportionate part of the taxes. We think this theory is unsound. As stated above, the tax burden is primarily that of the person retaining the beneficial interest in the property, the "equity" holder. Therefore by what manner of reasoning can it be said that because of the death of the person primarily liable for the taxes another person and his property become primarily liable for the taxes due by the deceased? This court will not assume that the legislature by making taxes inferior to a year's support intended thereby to indirectly make grantees of security deeds from a deceased person bear the burden of the taxes to a greater extent than they could have been forced to bear while the grantor was in life. Neither can we agree that both the legal title and the taxes on the legal title are superior to the year's support, as was held by the lower court in this case. This theory is unsound, for the reason that the only effect of such a rule would be to make a year's support inferior to such taxes, in direct conflict with the express terms of the Code. To hold that the taxing authorities are permitted by law to collect their claims in preference to a year's support because of the existence of a security deed would be to hold that if an estate is adequate and has no liabilities secured by deeds, taxes could not be collected as against a year's support, but that if the estate is inadequate because of such security deeds to provide food for the widow and minor children, then the assets of the estate must be applied to the payment of taxes in preference to a year's support. Such a rule would violate both the spirit and the letter of the year's-support statute, and would substitute a theory for cold facts and reality.

It is true that this court in *Beaton* v. *Ware County,* 171 *Ga.* 798 (156 S. E. 672), held that a tax item there involved was superior to a year's support, but an examination of that opinion discloses that because of the terms of the contract of purchase, requiring the purchaser to pay not only the purchase-money but the taxes on the property involved, this court construed the contract as making the taxes a part of the purchase-money, and held that the taxes, not simply as taxes·but as purchase-money, were superior to the year's support. To further illustrate the weakness of the theory, suppose even after the death of the grantor that the security deed

debts were paid and title revested in his estate. In view of the decision in *Commercial Bank of Augusta* v. *Burckhalter,* 98 *Ga.* 736 (25 S. E. 917), it could hardly be denied that a year's support would have priority over all liens for taxes that had attached to the property. In that case it was held: "A widow holding an execution against the administrator of her deceased husband for a year's support has the right to redeem land which the latter in his lifetime had conveyed to another for the purpose of securing a debt; and, upon her so doing, may have the land sold under her execution and take its proceeds in preference to a judgment creditor of the intestate whose judgment was obtained before the execution of the security deed." It will be noted that the conflicting claims of the security-deed holder and the judgment creditor were not involved in that case, since the security deed had been canceled and the entire property had become a part of the estate of the deceased before the sale at which the funds involved in that case were derived; and therefore nothing decided in that case conflicts with the ruling made above, with reference to the conflicting claims of the taxes and the security deeds. We conclude that the year's support as to the equity is superior to taxes, and that the widow and child have the prior claim as to this portion of the fund. Since the State, by public statute of which all the people have notice, elected to surrender for itself and its subdivisions the priority of tax liens in favor of the year's support, the rights of the security-deed holders should not be affected by the death of the grantor and the setting apart of the equity of redemption as a year's support, but the State or its subdivision, as the case may be, must bear the losses occasioned by such surrender. Such is the effect of the present decision.

This case is distinguished from *Real Estate Loan Co.* v. *Union City,* supra. An examination of the record in that case discloses that after the death of the grantor in a security deed a year's support in the equity to the land was set apart to his widow and minor children, and that thereafter the land was sold, under a power of sale contained in the security deed, for a sum less than the amount of the secured debt. The purchaser of the land sought an injunction to prevent enforcement of tax liens which had attached to the property, on the ground that the year's support had divested these liens. Since the equity and the claim for year's support had been

extinguished and shown to be worthless by the sale, clearly the land was still subject to the tax liens, as heretofore stated in this opinion; and this court properly held that the injunction should be refused. This case having arisen before the passage of the act of March 24, 1939 (Ga. L. 1939, p. 236), amending the Code, § 113-1002, no application of that act is required.

Our conclusion is that the rights of the claimants to the fund after payment of costs of sale are as follows: The year's support is superior to taxes, and is thus entitled to all the equity of the deceased in the fund. Tax claimants are entitled, according to their relative priorities, to the amount of the taxes paid by the security-deed holders from their "title" fund. The balance of the "title" fund, after the payment to the tax claimants as above stated, should be distributed to the security-deed holders in accordance with their respective priorities. It follows that the judgment of the lower court in case No. 12838 must be reversed. The City of Baxley in bill of exceptions No. 12839 complains of the amount of taxes awarded by the trial court; and since, under the rulings made above, that judgment awarded a greater amount to that complainant than it is entitled to, it is not injured by the judgment, and is entitled to no relief in this court. Accordingly, the judgment as to this plaintiff in error is affirmed.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*